IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BETTINA LANTELME,

    Plaintiff,                    No. 2:11-cv-0680 EFB

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.                ORDER

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross motions for summary judgment. For the reasons discussed below, the court grants plaintiff's motion, denies the commissioner's motion, and remands the case for further proceedings.

I.    BACKGROUND

        Plaintiff protectively applied for a period of disability, DIB and SSI, on April 25, 2006, alleging that she had been disabled since August 31, 2002.[1] Administrative Record ("AR") 33, 35, 138. Plaintiff's applications were initially denied on August 31, 2006, and upon

---

[1] Plaintiff subsequently amended her disability onset date, alleging disability since November 25, 2004. AR 149.

1

reconsideration on April 19, 2008. *Id*. at 47, 55. On December 2, 2008, a hearing was held before administrative law judge ("ALJ") Thomas P. Tielens. *Id.* at 384. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert (VE) testified. *Id.* at 384-432.

On May 18, 2009, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[2] *Id.* at 22-31. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

////

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

> 2. The claimant has not engaged in substantial gainful activity since November 25, 2004, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971).
>
> 3. The claimant has the following severe impairments: mild degenerative disc disease; questionable diagnosis of reflex sympathetic dystrophy (RSD), left arm (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except only occasional pushing or pulling with non dominant left upper extremity (LUE); occasional overhead reaching; occasional handling with LUE; occasional crouching and crawling; and unskilled work due to possible side effects of medication.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born [in] 1958 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 24-30.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 15. However, on January 8, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 3.

## II. RELEVANT MEDICAL EVIDENCE

Plaintiff alleges disability beginning November 25, 2004, due to reflex sympathetic dystrophy ("RSD") in her arms and left leg, which first presented in 1997. AR 121, 137. Plaintiff originally sought treatment from Dr. Grisby and Dr. Fishell for pain in her left arm. *Id*. at 355-371. Dr. Grisby treated plaintiff's complaints of pain with pain medication, but found that establishing a diagnosis was difficult. *Id*. at 360. Dr. Fishell determined that plaintiff had "most of the characteristics of complex regional pain syndrome/neuropathic pain."[3] *Id*. at 362.

From 2002 to 2006, plaintiff was treated at the Auburn Pain Rehabilitation Medical Clinic by Dr. Reinking. Dr. Reinking diagnosed plaintiff with complex regional pain syndrome and treater her with pain medication. AR 183-211, 315-324, 334-336, 339-341. In 2005, Dr. Reinking noted that plaintiff had been on a stable medication regiment for more than 7 years, had not experienced adverse side effects, and that she continued to work on a part-time basis. *Id*. at 189.

From February 2007 to August 2008, plaintiff was treated at the North Bay Medical Center by Dr. Pena. Dr. Pena diagnosed plaintiff with complex regional pain syndrome. *Id*. at 299. She opined that plaintiff could sit for 10-15 minutes at a time, stand for 5-10 minutes at a time, rarely lift 10 pounds, occasionally lift less than 10 pounds, occasionally twist, rarely stoop/bend, and never crouch or squat. *Id*. at 300-01. She further opined that plaintiff could work less than 8 hours a week. *Id*. at 302.

Plaintiff was examined by Dr. Bass on March 27, 2007. *Id*. at 171-75. Dr. Bass completed a comprehensive neurological examination and diagnosed plaintiff with complex regional pain syndrome in both her arms and left leg. *Id*. at 175. Dr. Bass opined that plaintiff could only sit, stand, and walk for less than 2 hours in an 8-hour workday; lift less than 5 pounds; and occasionally bend, stoop, kneel, and crouch; but never crawl or climb. *Id*. He

---

[3] Social Security Ruling 03-2p explains that the terms RSD and complex regional pain syndrome are synonymous.

further opined that plaintiff could not engage in pushing, pulling, grasping, handling, fingering, or feeling. *Id*.

The record also contains an unsigned, undated Physical Residual Functional Capacity Assessment form. *Id*. at 162-166. The form states that plaintiff's diagnosis is pain of unknown etiology and that chronic regional pain syndrome or RSD is not established by objective findings. *Id*. at 162-63. The form notes that there are no symptoms of "atrophy, cooler temperature, loss of hair [and] bone density scan" and that all findings are subjective. *Id*. at 163 The form further states that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday, occasionally climb and crawl; and is limited in pushing, pulling, reaching, and handling. *Id*. at 163-64.

III. ISSUES PRESENTED

Plaintiff contends that the ALJ erred by (1) crediting an unsigned Residual Functional Capacity Assessment form, (2) failing to properly credit the opinions of his treating physicians, (3) failing to follow policy guidelines, (4) failing to credit a hypothetical posed by the VE that accurately illustrated plaintiff's limitations, and (5) finding that plaintiff's daily activities supported a finding that plaintiff could work an 8-hour day. Pl.'s Mot. for Summ. J., Dckt. No. 18.

IV. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521

(9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

IV. ANALYSIS

Plaintiff first argues that the ALJ erred in relying on an unsigned, undated Residual Functional Capacity ("RFC") report in determining that she has the RFC to perform light work. Dckt. No. 18 at 4-5. Plaintiff relies on 20 C.F.R. § 404.1519n to support her claim that the ALJ was not permitted to consider the unsigned RFC report. *Id.* at 4. That regulation provides:

> All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions, explanations or comments provided with respect to the history, examination and evaluation of laboratory test results.

20 C.F.R. § 404.1591n(e). The regulations also provide that unsigned examination reports will not be used in denying a claimant benefits. 20 C.F.R. § 404.1519o.[4]

Notwithstanding the clear statement in the regulation that unsigned RFC reports will not be used, defendant contends that the ALJ did not err in relying on the unsigned RFC report.

---

[4] 20 C.F.R. § 404.1519o(b) states:
"We will not use an unsigned or improperly signed consultative examination report to make [a decision denying benefits]. When we need a properly signed consultative examination report to make these determinations or decisions, we must obtain such a report. If the signature of the medical source who performed the original examination cannot be obtained because the medical source is out of the country for an extended period of time, or on an extended vacation, seriously ill, deceased, or any other reason, the consultative examination will be rescheduled with another medical source."

6

1 Def.'s Mot. for Summ. J., Dckt. No. 19 at 6 n.3.  Defendant argues that the regulation does not
2 apply here because the unsigned RFC assessment was completed by a non-examining physician
3 and the regulation only concerns RFC reports completed by a consulting physican that examined
4 the claimant.  *Id*.  Although the United States Court of Appeals for the Ninth Circuit has not
5 addressed this issue, courts in other jurisdictions have not limited the application of these
6 regulations to examining-physician reports; rather, courts have held that these regulations
7 prohibit an ALJ from considering an unsigned RFC report prepared by a non-examining
8 reviewing physician.  *Terry v. Astrue*,  580 F.3d 471, 476 (7th Cir. 2009) (holding that 20 C.F.R.
9 § 404.1519o prohibited the ALJ from considering an unsigned report prepared by a reviewing
10 physican to deny plaintiff  benefits); *Guthrie v. Astrue*, No. 10-cv-03180, 2011 WL 3041365,
11 *22 (N.D. Ill. July 22, 2011) (finding that 20 C.F.R. § 404.1519o precluded consideration of
12 RFC form that was not properly signed by the non-examining physician); *Francis v. Astrue*, No.
13 3:10-cv-1030-J-34JBT, 2011 WL 7111553, *10 (M.D. Fla. Nov. 16, 2011)(citing 20 C.F.R.
14 § 404.1519o(e) to support its holding that the ALJ did not error by giving no weight to an
15 undated, unsigned RFC Assessment).  This court finds no reason to reach a contrary conclusion.
16 　　　　Furthermore, without a foundational signature there is little reason from the record to
17 attach any weight to the conclusions stated on the form.  The Commissioner has, by regulation,
18 identified accepted medical sources, including licensed physicians and psychologists, who can
19 provide evidence to establish an impairment.  20 C.F.R § 404.1513(a).  Based on the record
20 before the court, it cannot be determined what health care provider, if any, completed the
21 unsigned RFC report relied upon by the ALJ to deny plaintiff benefits.  Not only is the form
22 unsigned, but it does not include the name of the individual that completed the form.  Without
23 this information, the court is unable to determine whether this opinion is from an acceptable
24 medical source.  Thus, reliance on the unauthenticated form also fails to comply with
25 § 404.1513(a).
26 ////

Defendant contends, however, that it is clear from the record that the unsigned RFC report was completed by a state agency physician, Sudhir Jaituni. To support this argument, defendant cites to a reconsideration disability determination form, which is signed by Sudhir Jaituni, M.D. *See* AR 32-33. While this form indicates that Dr. Jaituni may have reviewed plaintiff's medical records, it does not establish that Dr. Jaituni authored the unsigned RFC report. There simply is no evidence of record showing that the physician who signed the reconsideration determination form is the same individual that completed the unsigned RFC report. *See Terry*, 580 F.3d at 477 (rejecting defendant's argument that the court "may infer that a physician who signed the state agency's reconsideration determination authored the unsigned opinion" as "pure conjecture."). Based on the foregoing, it is clear that the ALJ was not permitted by the regulations to consider the unsigned RFC report.

Furthermore, the ALJ's reliance on the unsigned report was not harmless. In evaluating the medical evidence, the ALJ gave substantial weight to the opinion contained in the unsigned RFC report. In discussing the report, the ALJ stated:

> The state agency assessment gave a diagnosis of "pain of unknown etiology" that could possibly be RSD and assigned limits that are precautionary but ultimately found the claimant did not have a medically determinable impairment. Exhibit 1F/2. This assessment noted that the chronic pain syndrome or RSD was not established by any objective findings, the claimant has no symptoms of atrophy, cooler temperature of the affected limb, no loss of hair or bone density scan and that the findings [are] all subjective. The state agency found the claimant able to perform work at the light exertional level with the additional restrictions of occasional pushing and pulling with the left upper extremity; occasional overhead reaching; occasional handling with the left upper extremity; occasional crawling, and unskilled work. Exhibit 1F. The undersigned has considered this opinion and finds it credible and consistent with the medical evidence of record, albeit generous to the claimant, and gives it the most probative weight. The undersigned hereby adopts the state agency's residual functional capacity assessment, as set forth in the findings, above, with the additional restriction of unskilled work activity due to possible medication side effects.

AR at 26. The ALJ concluded his discussion of plaintiff's RFC assessment by stating, "In sum, the above residual functional capacity assessment is supported by the state agency assessment

////

and the medical evidence of record."[5] *Id*. at 29.

While the ALJ adopted the assessment contained in the unsigned RFC, he essentially rejected the medical opinions from all other sources.[6] The ALJ gave no weight to the opinion of Dr. Pena, finding that it was purely based on plaintiff's subjective allegations and that Dr. Pena's findings were inconsistent with her diagnosis of RSD. *Id*. at 27. The ALJ also gave little weight to Dr. Fishell's opinion, finding that it was inconsistent with his own findings and the medical evidence in the record. *Id*. Dr. Bass's opinion was also given no weight based on the ALJ's determination that it was completely based on plaintiff's subjective complaints, was inconsistent with the medical evidence of record, and that his examination findings did not support an RFC of less than sedentary. *Id*. The ALJ gave Dr. Reinking's opinion little weight because it was based on plaintiff's subjective complaints and was not supported by examination reports or medical findings. *Id*. at 28.

It is clear from the ALJ's decision that he relied almost entirely on the unsigned, undated RFC report in assessing plaintiff's residual functional capacity. When this evidence is removed from consideration, it is no longer clear whether plaintiff maintains the ability to perform light work. Accordingly, the case must be remanded for further proceedings.[7]

## V. CONCLUSION

The ALJ's decision is not fully supported by substantial evidence in the record.

////

---

[5] Though the ALJ discussed the medical evidence in the record, he did not explain which portions of the medical record support the RFC assessment.

[6] The only exception is the additional limitation that plaintiff can only perform unskilled work due to possible side effects of medication. This limitation is presumably adopted from Dr. Pena's opinion that plaintiff was unable to concentrate due to her medication, as the ALJ did not discuss any other medical sources providing a similar opinion. *See* AR 26-28. The court finds it curious that the ALJ would adopt this opinion given that he explicitly stated that he "gives the opinion of Dr. Pena no weight." *Id*. at 27.

[7] Because the matter must be remanded based on the ALJ's reliance on inadmissible evidence, the court does not address the parties' remaining arguments.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in plaintiff's favor; and

4. This action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: September 14, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE